UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
THOMAS A SERAFIN, et al.,

                    Plaintiffs,

   -against-

NICHOLAS S. SCHORSCH., et al.,

                    Defendants,

   -and-

AMERICAN REALTY CAPITAL PROPERTIES, INC.,

                    Nominal Defendant,
------------------------------------------------------------- x

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

14 Civ. 9672 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiffs bring this shareholder derivative action under Maryland law on behalf of American Realty Capital Properties, Inc. ("ARCP"), a publicly-traded real estate investment trust ("REIT") incorporated in Maryland. Defendants are current and former ARCP officers and members of its board of directors. Jurisdiction is proper pursuant to 28 U.S.C. §1331. The case arises from alleged incidents of accounting fraud by ARCP officers and corresponds to the securities class action *In re Am. Realty Capital Props., Inc. Litig.*, No 15-mc-40 (S.D.N.Y). On April 3, 2015, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 23.1 on the ground that Plaintiffs failed to make a pre-suit demand on ARCP's board of directors. For the following reasons, Defendants' motion is granted.

## BACKGROUND

       ARCP is a REIT that generates income by purchasing real estate and renting it out to large commercial tenants. An important financial metric used by investors to value REITs is

1

known as adjusted funds from operations ("AFFO"). AFFO is a non-GAAP[1] value that measures a REIT's performance by excluding from net income all gains and losses unrelated to operations.[2]

On October 29, 2014, following an investigation by the Audit Committee of the board of directors, ARCP filed a Form 8-K with the SEC in which it disclosed improper accounting in the company's 2013 Annual Report (Form 10-K) and its Quarterly Reports (Form 10-Q) for the periods ended March 31, 2014 and June 30, 2014. In its preliminary findings, the Committee revealed that ARCP "incorrectly included certain amounts related to its non-controlling interests in the calculation of adjusted funds from operations . . . and, as a result, overstated AFFO for [the quarter ended March 31, 2014.]" Compl. ¶ 90. The Audit Committee also revealed that "this error was identified but intentionally not corrected, and other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014." *Id.* The press release announced the resignations of the Chief Financial Officer, Brian Block, and the Chief Accounting Officer, Lisa McAlister, but expressed "full confidence in the management team and staff." *Id.* ¶¶ 93-94. ARCP's share price finished trading on October 29th approximately 20% below its previous day close, and in the days that followed, the SEC and FBI announced investigations into the company.

On December 15, 2014, ARCP filed another Form 8-K with the SEC announcing the resignations of Chairman Nicholas Schorsch,[3] Chief Executive Officer David Kay,[4] and

---

[1] United States "Generally Accepted Accounting Principles."

[2] For example, revenue from leases and recurring capital expenditures are included in AFFO, but expenses related to the acquisition or liquidation of a property are not.

[3] Mr. Schorsch was also ARCP's founder and its CEO until October 1, 2014.

[4] Mr. Kay was ARCP's President during the relevant period. He was named CEO on October 1, 2014.

2

President and Chief Operating Officer Lisa Beeson.[5] On December 18, former Chief Accounting Officer Lisa McAlister brought a defamation claim in New York Supreme Court against ARCP, Schorsch, and Kay for the press release that accompanied her resignation. *See Lisa Pavelka McAlister v. Am. Realty Capital Props., Inc., et al.*, No. 162499/2014 (Sup. Ct. N.Y. Cnty.). McAlister alleged that she had reported accounting irregularities to Mr. Schorsch and Mr. Kay as early as February 2014, but that they directed her "not to change or correct the fraudulent reports, in an apparent effort to avoid public disclosure of the Company's faltering financial performance." Compl. ¶ 111. She also alleged that her warning to ARCP's auditing firm Grant Thornton was ignored and that she was instructed to file the Q2 2014 report "as is." Ms. McAlister withdrew her complaint on February 19, 2015.

On March 2, 2015, ARCP released the final results of the Audit Committee's investigation. The investigation found a number of violations of U.S. GAAP accounting standards and other misrepresentations, such as mischaracterization of general and administrative expenses as expenses related to mergers and other non-routine transactions. The Committee also found possible instances of self-dealing by Mr. Schorsch, and concluded that internal controls for ensuring the accuracy of financial reports were deficient. *See* Compl. ¶ 120. The company revised AFFO downward by $0.08 per share for FY 2013, $0.07 per share for Q1 2014, and $0.03 per share for Q2 2014.

On February 17, 2015, I consolidated under this caption three separate derivative actions brought on behalf of Nominal Defendant ARCP. On March 11, 2015, following the release of the Audit Committee's final report, Plaintiffs filed this amended complaint. It is undisputed that Plaintiffs did not make a demand for litigation on ARCP's board prior to

---

[5] Ms. Beeson served as COO during the relevant period. She added the title of President on October 1, 2014.

3

commencing this action. Rather, Plaintiffs assert that demand would be futile and should therefore be excused.

## LEGAL STANDARD

In a derivative action, individual shareholders bring suit as nominal plaintiffs to enforce a corporation's causes of action against "faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)). As a threshold matter of standing, the shareholder generally must demonstrate "that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Ross v. Bernhard*, 396 U.S. 531, 534 (1970); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 597 (S.D.N.Y. 2007). The purpose of the "demand requirement" is to "afford[] the directors an opportunity to exercise their reasonable business judgment" as to whether incurring the expense of enforcing a legal right is in the corporation's best interest. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533 (1984) (internal quotations omitted). The Federal Rules specifically require a derivative complaint to

> state with particularity [] any effort by the plaintiff to obtain the desired action from the directors or comparable authority and . . . the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(3). Unlike a 12(b)(6) motion, a motion to dismiss pursuant to Rule 23.1 "is not intended to test the legal sufficiency of the plaintiff's substantive claim. Rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *Canty v. Day*, 13 F. Supp. 3d 333, 343 (S.D.N.Y. 2014) (citation omitted).

But while the federal rules contemplate the existence of a demand requirement, the substance of the requirement and the circumstances that may excuse it "are determined by the

4

law of the state of incorporation," which in this case is Maryland. *Kamen*, 500 U.S. at 99. Under Maryland law, futility of a demand is

> a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001). This is because "the futility exception essentially eliminates any chance at meaningful pre-litigation alternative dispute resolution." *Id.* Meanwhile, if "a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business judgment rule standard." *Id.* "Accordingly, demand is rarely, if ever, properly excused under Maryland law."[6] *Kautz v. Sugarman*, 456 F. App'x 16, 19 (2d Cir. 2011).

## DISCUSSION

The Amended Complaint, filed on March 10, 2015, seeks to excuse demand on the board of directors as composed on November 17, 2014, the date of the original complaint. Although the board has undergone substantial turnover in the intervening time, I assume, without deciding, that November 17, 2014 is the operative date for assessing the merits of Plaintiffs' futility excuse. *See Strougo v. BEA Assocs.*, No. 98-cv-3725, 2000 WL 45714, at *4-5 (S.D.N.Y. Jan. 19, 2000) (explaining that "[t]here is no guidance on this question . . . by the Maryland courts," so the court looked to Delaware law to fill the void and determined that "allegations of

---

[6] The court in *Washtenaw Cnty. Emps. Ret. Sys. v. Wells Real Estate Inv. Tr., Inc.*, No. 07-cv-862, 2008 WL 2302679 (N.D. Ga. Mar. 31, 2008) surveyed derivative actions applying Maryland law in federal courts across the country and found only one post-*Werbosky* opinion through 2008 (out of 15) that found demand was futile. *See Felker v. Anderson*, No. 04-372-cv, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005). As Judge Cote explained in rejecting the futility excuse in *Seidl v. Am. Century Cos.*, 713 F. Supp. 2d 249, 258 n.13 (S.D.N.Y. 2010), the lone case, *Felkner*, has itself been widely criticized. Perhaps the most notable criticism comes from the Eighth Circuit. *See Gomes v. Am. Century Cos.*, 710 F.3d 811, 817 (8th Cir. 2013) (concluding that *Seidl*, rather than *Felkner*, "states the better view of Maryland law on this point.").

5

demand futility [should] be considered as of the date of the filing of [the] original complaint."). At that time the board consisted of Nicholas Schorsch, David Kay, Leslie Michelson, Edward Rendell, Thomas Andruskevich, Bruce Frank, and William Stanley. Plaintiffs assert that demand on each member is excused. *See* Compl. ¶¶ 130-73.

Plaintiffs contend that, as officers of ARCP who derived their principal income from the company, Mr. Schorsch and Mr. Kay were not independent. Further, they allege that Schorsch and Kay participated in the fraudulent conduct, so they would be personally interested in any action taken by the board. The conflicts thus would not allow them to exercise good-faith business judgment in responding to a pre-suit demand. I agree with Plaintiffs. Any remedy sought by Plaintiffs in a pre-suit demand would likely be directly adverse to Mr. Schorsch and Mr. Kay personally. This conflict is significant enough that Schorsch and Kay could not "reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky*, 766 A.2d at 144. Accordingly, I find that demands upon them would be futile.

However, Plaintiffs' basis for alleging futility with respect to the five outside, non-management board members is much less obvious. None of the five is alleged to have participated in the fraudulent conduct, so there is no reason to believe that any would be "personally interested in the outcome of any [ ] inquiry," as Plaintiff alleges. And even if a civil suit could potentially expose them to liability[7] – for approving the filings in question or failing to implement adequate internal oversight, for example – "the allegation that a suit may render a director personally liable" does not excuse demand in Maryland. *Smith v. Stevens*, 957 F. Supp. 2d 466, 472 (S.D.N.Y. 2013). Plaintiffs' other arguments for futility boil down to the following:

---

[7] The class action plaintiffs in *In re American Realty Capital Properties, Inc.*, 15-mc-40, seek to hold the non-management directors liable under a negligence theory.

6

1. Michelson, Rendell, Andruskevich, Frank, and Stanley voiced support for ARCP management following the October 29, 2014 revelations of improper accounting and otherwise publicly downplayed the seriousness of the improprieties. Thus, they had either "prejudged" the situation and could not respond objectively to a demand.

2. Michelson, Stanley, and Rendell had been affiliated with other entities owned by Schorsch as directors, managers, or investors and in Governor Rendell's case, as a recipient of campaign contributions. These mutually beneficial personal and business relationships with Mr. Schorsch compromised the directors' independence.

Neither allegation comes close to passing "Maryland's relatively strict analysis of demand futility." *Id.* at 473. For one thing, public comments supporting management around the October 29, 2014 announcement, before the alleged involvement of Schorsch and Kay came to light, can hardly be read to mean that the board members had already rendered judgment on the situation. At best, the directors' comments suggest that they continued to trust ARCP's senior management at the time and would have been skeptical about removing them. But demand is not excused simply because directors "would be hostile to the action." *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001).

And as far as the directors' relationships with Mr. Schorsch go, Plaintiffs have offered no particularized showing that the non-interested directors were more willing to risk their own personal reputations than risk their relationships with Mr. Schorsch. In fact, actions taken by the board in response to the allegations of wrongdoing distinctly suggest otherwise. For example, in response to a September 7, 2014 report by a whistleblower, the board's Audit Committee promptly initiated an investigation with the assistance of independent counsel and forensic experts. Compl. ¶ 90. Within two months of the October 29th announcement, the board oversaw the departures of five senior ARCP officers, including Mr. Schorsch himself, and began unwinding all the company's relationships with entities under Mr. Schorsch's control. Compl. ¶¶ 7, 104. And the board secured clawbacks of inappropriate payments made by ARCP on behalf of Mr. Schorsch,

7

Compl. ¶ 118, as well as an agreement to return 1,000,000 shares of stock if a court found that Mr. Schorsch breached his fiduciary duty or engaged in any fraud. *See* Radin Decl. Ex. A (ARCP Form 8-K of Dec. 15, 2014). Further, Plaintiffs' emphasis on directors' relationships with Schorsch ignores that courts regularly "emphasize[] the significant value of pre-suit demand in allowing 'directors – even interested, non-independent directors – an opportunity to consider, or reconsider, the issue in dispute,' and to seek resolutions other than expensive litigation, or even to accede to the demand." *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 141 (2d Cir. 2004). Thus, even if Michelson, Rendell, Andruskevich, Frank, and Stanley were interested directors, a demand would still have been useful under Maryland law.

While demands on Schorsch and Kay would likely have been futile, Plaintiffs have failed to "clearly demonstrate, in a very particular manner," that demands on Michelson, Rendell, Andruskevich, Frank, and Stanley fit into Maryland's "very narrow" futility exception. *See Werbowsky*, 766 A.2d at 144. On November 17, 2014, five out of seven directors, a clear majority, could reasonably have been "expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Id.*

Maryland's requirement of "a pre-suit demand on the directors is not an onerous [one]." *Id.* "In fact, the making of such a demand is far less onerous than the preparation and filing of a shareholder derivative complaint."[8] *Sekuk Glob. Enters. Profit Sharing Plan v. Kevenides*, 2004 WL 1982508, at *5 (Md. Cir. Ct. May 25, 2004). Plaintiffs should have made a demand on the board of directors here. Their failure to do so is not excused.

---

[8] On November 17, 2014, just 19 days after ARCP filed its Form 8-K with the SEC, Michelle Graham Turner 1995 Revocable Trust became the first Plaintiff in this action to file a complaint. Plaintiff Edward Froehner filed his complaint on November 26, 2014, and they were joined by Plaintiff Thomas Serafin on December 8, 2014.

8

## CONCLUSION

For the foregoing reasons, I hold that Plaintiff's failure to make a demand is not excused on the ground of futility. Defendants' motion to dismiss pursuant to Fed R. Civ. P. 23.1 is granted. The clerk shall mark all open motions terminated, and the case closed.

SO ORDERED.

Dated: June 24, 2015
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge